The facts of the case, and the questions discussed, arq fully stated in the following opinion of the'Court, delivered by
Earle, J.
The Ordinance of the City Council provides, that no owner, or other person having the care or management of negroes, or other slaves, shall permit any such slave, whether male or female, to be employed on hire, out of their respective houses or families, without first infoiming the city treasurer of the specific trade or employment which he or she is to pursue, when working on hire; and without obtaining 'from him a ticket or badge, expressing the same, and numbered • under a penalty of forfeiting twenty dollars, with costs, for each and every such offence. And after specifying the sums which shall be paid for badges for Slaves of different trades and employments, concludes thus : “ Which said ticket or badge, shall continue until the last day of December, in every year, and no longer, and shall be renewed at the beginning of every year, on payment of the fees' aforesaid.” The slaves in question had been employed on hire, during the year 1834, with lawful badges, which expired on the last day of December. ' On the 3d February, 1835, they were found working on hire, without badges. They were not seized and harried to the work-house, as they might have been, under another section *57 of the Ordinance; for in that case, they might have been detained until the fine and costs were paid. They were not so seized, because the defendant promised the marshal, that he would .petition Council to be relieved from the penalties incurred. Instead of this, he went immediately and procured badges. The case was proved by the city marshal, Solomon Moses; and it is set down as an exception to the verdict for the. plaintiffs, thát he was an incompetent witness, from' interest; and that the release of his interest to the plaintiffs, did not restore his competency. Supposing the witness interested, it has been held and ruled, Heirs of Wacter vs.Executors of Wacter, 2 Hill, 442, that such an assignment or release as that executed by the witness here, was effectual > to divest his interest arid restore his competency. In the case referred to, the assignment, it is true, was made to an indifferent person, a stranger to the suit. Here it is said to be made to the plaintiffs. There does not appear to us to be any sensible difference, on principle, between a release generally, and an assignment without value and without warranty, if the effect of both be to divest the' witness of that pecuniary interest in the result of the action, or the event' of the suit, which rendered him an incompetent witness, without subjecting him to any future liability, which might leave a bias on his mind. The precise question now made, was much discussed here in the case of Baker et al. vs. Drayton’s Administrators, 'several years ago ; and a majority of the court then held, as we do now, that an assignment to the party plaintiff was effectual to restore competency. The point, however, I think, was not ruled in that case expressly, as it turned mainly on other questions. In fact, however, the marshal was not, in the opinion of the court, incompetent at first. The Ordinance provides that the marshal shall be entitled to receive one half of every fine paid for any offence or offences against any of the city Ordinances, provided he prosecutes such offence of offences, and proves the same by other evidence than his own. The moment his own testimony became necessary, and he was sworn, he was no longer entitled to half the fine ;' he ceased tó be interested, and was therefore competent.
Upon the facts pfoved, was the defendant liable under the Ordinance This inquiry will involve a consideration of all the exceptions taken, and views presented, by the counsel for the motion. And this Court is of opinion, that the charge of his Honor the Recorder, Was entirely correct. The penalty is for permitting slaves to be employed, on hire, out of the respective houses or families of the owners.' These slaves were employed in a bake-house owned by the defendant, but leased to Marshall, and occupied by him, to whom the slaves were also hired. They were clearly, therefore, not employed' iri the house or family of *58 defendant; not in a house under his control or supervision, but in a house# for the time, of another, who had the control of the household, and was responsible for their conduct; and such is the meaning of the Ordinance. It is supposed, that the penalty has not been incurred, because the negroes Were not seized. But that section of the Ordinance was not intended to provide the mode of collecting the penalty; at least, not the only mode. Its object was mainly to arrest and confine slaves employed on hire, without badges, until their owners were ascertained, and until badges were obtained ; when so arrested and lodged in the work-house, they could not be discharged except on payment of the fine. And thus far it provides a summary mode of collecting the fine. Its main purpose seems to have been that already stated, to secure the compliance of owners with the provision which requires the badge. And although it accumulates the means of recovery, it does not exclude the Council from sueing, under the general enactment on that subject. The slaves had been hired out the preceding year with badges, which expired the last day of December. And it is argued, that in this case they had been renewed at the beginning of the succeeding year, within the meaning of the Ordinance. But so it does not seem to a majority of the Court, The month of January is said to be allowed by'tbe city officers for this purpose; but this is an indulgence extended by their own liberality. -A strict construction would confine the owners within a much shorter period ; and perhaps limit them to the first day of the month. The third day of February is clearly not the beginning of the year, within the meaning of the Ordinance, or the practice of the city officers, which may properly be allowed to control the interpretation of the Ordinance. It is assumed, that the slaves continued to be employed, on hire, from the last day of December, 1834, up,to 3d February, 1835. Of this, there is no evidence. On the latter day they were found so employed, without badges. And we are of opinion, that it was a violation of the Ordinance, and that-the penalty was incurred. This seems to have been the opinion of the defendant himself, and to have been expressly acknowledged, for he promised to petition Council to be released from the penalties. He immediately went to the City Treasurer, paid the fees, and procured badges. And it is now urged, in his behalf, that by receiving the fees, and granting the badges, the plaintiffs have released the penalty. In support of this view, the case of The City Conncil vs. Corleis, 2d Bailey, is cited. That was an,action to recover a penalty for retailing without a license: The Ordinance on that subject provides, that application shall be made ten days before the first day of April and October, by every one desirous of obtaining a license for the ensuing year. The defendant, Corléis, having been for several years a licensed retailer, *59 applied previous to the first of October, and his application was granted, but he omitted to take out his license, although warned by the city police to do so, and pay his fees. He was’ detected on the 30th of December, in an act of retailing, and information lodged against him. On the 4th of January, he paid the City Treasurer, and procured his receipt for sixty dollars, for a license to retail for one year, from October., 1829. And it was held, that the Council, through their Treasurer, having received the fee, and granted the license for the whole year, to take effect from the previous October, could only mean to legalize any intermediate retailing, and to release their claim for any penalty incurred by such retailing. It was competent for them to do so. The penalty was for their benefit, recoverable only by them. They had made an order to grant a -license to the defendant, on his application, from October — and after notice of his retailing, the Treasurer gave him a license, to have effect from the date of the application, for one year. "We think the case before us, distinguishable from that. The Ordinance concerning badges for slaves hired out, does not prescribe the time when they shall be applied for, in the first instance, nor at what time they shall commence. An original application for a badge may be made at any time, and whenever paid for, is granted, to take effect immediately. It is from that time evidence that the slave has the permission of Council to be hired out, whenever the owner chooses, until the end of the December following. It is not a license from such a day to such a day. If, therefore, the application of the defendant on the 3d February, had been his first application for badges, it is very clear that the badges then granted dould have had no retrospective operation, so as to legalize any hiring before that time. But it is argued, as he had the badges for the preceding year, and procured badges again on the 3d February, which would be good for the remainder of 1835, therefore the intermediate employment, on hire, is sanctioned by the badges granted on the 3d February, on the authority of Corleis’s case. We do not think so. The defendant gave no notice on the first of January, of his intention to continue his slaves on hire, or to renew his badges. He may have resolved not to hire them out again, and they may have been out of employment until the 3d of February ; and in that case, there could be no ground to say, that the new badges were only a continuation of the former permission. The plaintiffs here did not know of the -act complained of, as a violation of the Ordinance. And the City Treasurer had no option when the application was made, but to grant the badges from that time, which he was obliged to do, without reference to the beginning of the year. And there is nothing to indicate the intention of the Treasurer, or the plaintiffs, to give them a past operation, as in the case of the receipt for *60 the license to retail from October, 1829. We think, therefore, that the plaintiffs were entitled to recover, and the motion is refused.
DeSaussure, Johnson, G-antt, Johnston, Butler and Richardson, CO- and JJ. concurred.